J-S35015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  J.M.S.-R., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  N.R. | No. 229 MDA 2018 |

Appeal from the Decree Entered December 28, 2017
In the Court of Common Pleas of Berks County
Orphans' Court at No(s): 84857

BEFORE:  BENDER, P.J.E., PANELLA, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED AUGUST 03, 2018**

N.R. ("Mother") appeals from the December 28, 2017 decree that granted the petition filed by the Berks County Children and Youth Services ("BCCYS") to involuntarily terminate her parental rights to her minor child, J.M.S.-R. ("Child") (born in November of 2015), pursuant to sections 2511(a)(1), (2), (5), (8) and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938.  After careful review of the record and applicable law, we affirm.[1, 2]

The orphans' court summarized the relevant facts and procedural history of this case in its Pa.R.A.P. 1925(a) opinion:

> Mother came to the attention of BCCYS as early as 2011 as a result of reports alleging lack of appropriate parenting skills, lack of stable and appropriate housing, domestic violence, lack of basic

---

[1] The parental rights of Child's father, J.S. ("Father"), were terminated by separate decree on the same date.  Father is not a party to this appeal.

[2] A guardian *ad litem* ("GAL"), Melissa Krishock, Esq., and a child advocate, Jennifer L. Grimes, Esq., were appointed to represent the best interests and the legal interests of Child.  Both attorneys participated in the termination hearing.  The GAL joined in the brief filed by BCCYS.

needs for her children, unstable mental health, alcohol and other drug abuse, truancy, lack of supervision, and a history of incarcerations due to her involvement with the criminal justice system. At the time, Mother had three minor children who were all adjudicated dependent by the [c]ourt in March [of] 2014.

As a result of Mother's inability or unwillingness to comply with [c]ourt-ordered services provided by BCCYS and to make changes necessary to provide for a safe, healthy, and permanent living environment for her children, BCCYS petitioned the [c]ourt to involuntarily terminate Mother's parental rights. The matter proceeded to a hearing in December [of] 2015, and the [c]ourt terminated Mother's parental rights with regard to those three children (all three children were adopted). Leading up to that termination hearing, Mother gave birth to [Child], the [c]hild at issue in this appeal.

On November 16, 2016, a little more than one year after [] Child's birth, BCCYS established Father's paternity of [] Child through genetic testing. Although Father did not sign a consent to adoption, he testified that he: (1) was happy where [] Child was placed (with the foster parents); (b) had nothing against the foster parents; and (c) believe[s] [] Child will grow up with a better life where she currently resides. Father further testified that he would not sign away rights to his daughter because he would not want her to find out at a later date that he did so willingly.

Because the [c]ourt previously terminated Mother's parental rights involuntarily with regard to three other children, the [c]ourt found that "aggravated circumstances" existed pursuant to 42 Pa.C.S.[] § 6302, permitting BCCYS to file a petition of emergency custody of [] Child before Mother had been discharged from the hospital. The [c]ourt subsequently conducted a dependency hearing[,] at which time the [c]ourt ordered, among other things, that Mother cooperate with parenting education, a mental health evaluation and recommended treatment, random urinalysis, domestic violence evaluation and recommended treatment, and other casework services.

According to testimony from Jennifer Kemmerer, a caseworker with BCCYS assigned to Child's case, on November 28, 2015, approximately two weeks after giving birth to [] Child, Mother's parole was revoked in connection with certain criminal proceedings. As a result, Mother was incarcerated at Berks

County Prison. Between that time and December 21, 2015, Mother had only taken advantage of one out of three opportunities to have a visit with [Child]. Although Mother could have had weekly visits while incarcerated, she did not request any during that time (from December [of] 2015 through April [of] 2016). Ms. Kemmerer also testified that, while Mother was incarcerated, she initially participated in casework services, but that Mother failed to reach out to BCCYS caseworkers following her release from incarceration in April [of] 2016.

A chance meeting between a BCCYS caseworker and Mother in the Berks County Services Center in May [of] 2016 resulted in Mother['s] being scheduled for a meeting to develop a plan for services[,] as well as Mother['s] being informed [that] bi-weekly visits with [] Child could take place with the condition that Mother provide contact information (a phone number) to BCCYS, and that she call and confirm visits with the agency. Mother failed to follow-up with BCCYS, having never provided a phone number or contacting the agency to confirm visits with her daughter.

In August [of] 2016, Mother was re[-]incarcerated in Berks County Prison on a parole violation, where she remained until March [of] 2017. When released in March [of] 2017, Mother failed to provide BCCYS with an address or whereabouts for approximately one month. During that time, however, Mother did contact BCCYS about resuming visits with [] Child. Ms. Kemmerer testified that, although Mother missed a monthly visit in April, she did attend all subsequent monthly visits from May [of] 2017 through December [of] 2017. Despite the renewed interest in visitations, Ms. Kemmerer testified that, since the birth of Child, Mother had spent less than 15 total hours caring for [] Child.

Orphans' Court Opinion ("OCO"), 3/5/18, at 4-7 (citations to record omitted).

On May 25, 2016, BCCYS filed a petition to involuntarily terminate Mother's parental rights. On December 28, 2017, a hearing was held on that petition. Mother appeared in person at the hearing and was represented by court-appointed counsel. After hearing testimony from Mother, Father, and Ms. Kemmerer, the court issued a decree terminating Mother's parental rights

to Child pursuant to section 2511(a)(1), (2), (5), (8) and (b) of the Adoption Act.

Mother timely filed a notice of appeal on January 25, 2018, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Mother now presents the following sole issue for our review: "Whether the [orphans'] court erred and/or abused its discretion by entering an order on December 28, 2017[,] involuntary [*sic*] terminating the parental rights of Mother[,] where Mother was engaged and progressing in her court-ordered services and reunification goals[?]" Mother's Brief at 6.

We review an appeal from the termination of parental rights under the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, … 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; ***R.I.S.***, 36 A.3d [567,] 572 [(Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel Bassett v. Kia Motors America, Inc.***, … 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, … 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***
>
> As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold

record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, … 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012).

In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re S.H.***, 879 A.2d 802, 806 (Pa. Super. 2005). We have previously stated:

The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003) (internal quotation marks omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the

needs and welfare of the child under the standard of best interest of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511; other citations omitted).

This Court must agree with only one subsection of 2511(a), in addition to section 2511(b), in order to affirm the termination of parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Herein, we review the decrees pursuant to sections 2511(a)(2) and (b), which provide as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> …
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> …
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2) and (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008).

Moreover, this Court has previously stated:

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental

responsibilities while others provide the child with his or her physical and emotional needs.

*Id.* Where a parent does not "exercise reasonable firmness in declining to yield to obstacles, his [parental] rights may be forfeited." *In re A.S.*, 11 A.3d 473, 481 (Pa. Super. 2010). With respect to the application of section 2511(a)(2) to an incarcerated parent, the Pennsylvania Supreme Court held:

> [I]ncarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2).

*S.P.*, 47 A.3d at 830.

Instantly, Mother argues that the court erred in terminating her parental rights to Child, because she "made significant progress with her court-ordered services since her release from incarceration[,]" and she "began to demonstrate that she has the capacity to be a suitable parent[.]" Mother's Brief at 10. Additionally, Mother claims that while incarcerated, she made a good faith effort to be involved in Child's life. *Id.* at 14. Since her release, Mother states that she has maintained employment and a stable residence. *Id.* at 16. The record clearly belies Mother's claims.

First, the orphans' court found that between the time Mother was released from prison in March of 2017 and the termination hearing in

December of 2017, Mother failed to obtain suitable, stable housing,[3] nor did she maintain steady employment.[4] OCO at 7. With regard to visitation, the court noted that, "given numerous opportunities to spend time with and form a bond with [] Child, Mother has … failed to follow through with even the simplest task of consistently staying in contact with BCCYS to arrange and confirm visits with [] Child." *Id.* at 8. Even while incarcerated, visitation was available to Mother; however, she failed to take advantage of the opportunity to spend time with Child. *Id.* at 8-9.

"Beyond the issues with visitations…, Mother has also shown a propensity for minimally beginning improvement through services, only to fail by not following through." *Id.* at 9. The record reflects that Mother began, but failed to complete, domestic violence counseling, drug and alcohol treatment, and individual mental health counseling. *Id.*

> According to Ms. Kemmerer, once Mother was out of prison the second time, and in contact with BCCYS, she was evaluated by Berks TASC (Treatment Access and Services Center), after which she was referred to Pennsylvania Counseling for intensive outpatient services that included both group and individual therapy. Mother relapsed and tested positive for using cocaine [on] September 22, 2017…. Subsequently, Mother was to begin a Spanish-speaking outpatient program on October 11, 2017, but she failed to attend. On November 21, 2017, more than one

---

[3] "Ms. Kemmerer testified that BCCYS was aware of at least four different addresses for Mother, and that there was approximately one month where BCCYS was unaware of Mother's location." OCO at 7.

[4] The orphans' court noted that Mother has changed jobs three times since she was released from prison and stated that this established "a track record of *instability*." N.T. Termination, 12/28/17, at 56 (emphasis added).

month later, Mother reached out to Ms. Kemmerer to advise that Mother was going to switch to a different counseling service (Berks Counseling Center). BCCYS received notice from Pennsylvania Counseling that Mother had been unsuccessfully discharged from the program; Mother stopped providing urine samples after November 20, 2017.

…

Mother had been required to participate in mental health and domestic violence evaluations, along with participating in any counseling recommended as a result of those evaluations. Although Mother did initially participate in some individual therapy, Ms. Kemmerer testified that Mother's frequency of being in and out of prison precluded her from being able to successfully complete such services. Mother apparently did begin some individual mental health therapy after her second release from prison. Ms. Kemmerer testified, however, that she was unable to confirm what services Mother participated in because Mother did not provide the name of the therapist to BCCYS.

With regard to domestic violence concerns, Mother did participate in the required evaluation but failed to keep BCCYS informed of her participation with recommended counseling associated with the domestic violence evaluation. Ms. Kemmerer … later learned Mother had been complying with domestic violence therapy only to stop attending on October 5, 2017. Mother also failed to return phone calls to re-engage in those services.

*Id.* at 7-8. Mother has continued to demonstrate an incapacity to parent and the inability to remedy the causes of such incapacity. As we have previously stated, "[a] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010) (internal citation and quotation marks omitted).

Moreover, Mother's pattern of criminal activity and multiple periods of incarceration, as well as her failure to comply with the goals set for her by BCCYS, satisfy the requisites of incapacity, abuse, neglect or refusal of the

parent, pursuant to subsection 2511(a)(2). ***See In re Adoption of W.J.R.***, 952 A.2d 680, 687 (Pa. Super. 2008); ***see also In re Z.P.***, 994 A.2d 1108, 1125 (Pa. Super 2010) (finding father's repeated drug use and criminal activity show a pattern of incapacity to parent). "This Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." ***In re I.J.***, 972 A.2d 5, 12 (Pa. Super. 2009) (internal citation omitted). After careful review, we deem the court's decision to terminate Mother's parental rights, pursuant to section 2511(a)(2), to be well-supported by the record.

After we determine that the requirements of section 2511(a) are satisfied, we proceed to review whether the requirements of subsection (b) are met. ***See In re Adoption of C.L.G.***, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but the focus is on the child pursuant to section 2511(b). ***Id.*** at 1008.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "intangibles such as love, comfort, security, and stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012). In ***In re E.M.***, [620 A.2d 481, 485 (Pa. 1992)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to

- 11 -

discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

Here, the trial court concluded that it would be in [Child's] best interest for Mother's parental rights to be terminated. The court emphasized that, since Child's birth, Mother has spent less than one day caring for Child and that the foster parents have been meeting Child's developmental, physical, and emotional needs. OCO at 9. Mother does not raise any specific objection to the orphans' court finding that termination of her parental rights was in the best interest of Child, pursuant to 23 Pa.C.S. § 2511(b); however, Mother does assert that she was making progress bonding with Child. Mother's Brief at 17.

Again, we conclude that the record supports the orphans' court's decision to terminate Mother's parental rights. When asked at the hearing whether she had any concerns during visits between Mother and Child, Ms. Kemmerer replied:

> [Child] takes a while to warm up to her still. She has started to get to know her a little better, [] she's not clinging to the resource mother like she had been. She will go and play with her; but she does not see her in a parental role, more like a playmate.

N.T. Termination at 18. Moreover, Ms. Kemmerer testified that Child is "very bonded and attached to [her foster parents]" and that "she looks to them as her parents." ***Id.*** at 21. Accordingly, the agency recommended that Mother's parental rights be terminated so that Child can be adopted. ***Id.***

In support of its decision to terminate Mother's parental rights, the orphans' court summarized:

> Mother has spent less than one full[ ]day caring for [] Child since birth. Any bond between Child and mother is minimal, at best. In fact, based upon Ms. Kemmerer's testimony, [] Child is bonded with the foster parents. Terminating Mother's parental rights would not detrimentally affect [Child]. In fact, the foster parents are resources who can continue to meet Child's developmental, physical, and emotional needs. It is clearly within [] Child's best interest[] to terminate Mother's parental rights. In fact, [] Child deserves stability, permanency, and an opportunity to grow up in an environment free of the disruption and turmoil surrounding the dependency process.
>
> Here, Mother's "right to the custody and rearing of [C]hild is converted, upon the failure to fulfill [] her parental duties, to [] [C]hild's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy[,] safe environment." *In re: B.L.W.*, 843 A.2d at 388. As the Superior Court has observed, "it is time to give [Child] a chance to have [her] fundamental needs met without the constant insecurity that comes with knowing that someday, perhaps in the unreasonably distant future, [she] might again be wrenched away from [her] committed and capable caregivers." *Id.* (quoting *In re N.C.*, 763 A.2d 913, 919 (Pa. Super. [] 2000)).

OCO at 9.

As there is competent evidence in the record that supports the orphans' court's credibility and weight assessments regarding Child's needs and welfare, and the absence of any bond with Mother, we conclude that the court did not abuse its discretion as to section 2511(b). *See S.P.*, 47 A.3d at 826-27. Accordingly, we affirm the decree terminating Mother's parental rights to Child.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/03/2018